IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NANCY E. LEWEN, a/k/a N. ELIZABETH COOK, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) C.A. No. 10-164 Erie |
| | ) District Judge McLaughlin |
| EDINBORO UNIVERSITY OF PENNSYLVANIA, *et al.*, | ) ) ) |
| Defendants. | ) ) ) ) |

**MEMORANDUM OPINION**

McLAUGHLIN, SEAN J., J.

This matter is before the Court upon a Motion to Dismiss filed by Defendants Edinboro University of Pennsylvania ("Edinboro University"), the Pennsylvania State System of Higher Education ("PASSHE"), Edinboro Dean of Student Affairs Dr. Kahan Sablo ("Sablo") and Edinboro Chief of Campus Police Thomas Nelson ("Nelson"). We have jurisdiction pursuant to 28 U.S.C. § 1331. For the reasons which follow, Defendants' Motion to Dismiss will be granted.

**I.   STANDARD FOR REVIEW**

Rule 8(a) of the Federal Rules of Civil Procedure states that a pleading must set forth a claim for relief which contains a short and plain statement of the claim showing that the pleader is entitled to relief. A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007); Neitzke v. Williams, 490 U.S. 319

(1989); Estelle v. Gamble, 429 U.S. 97 (1976). The issue is not whether the plaintiff will prevail at the end but only whether he should be entitled to offer evidence to support his claim. Neitzke; Scheuer v. Rhodes, 419 U.S. 232 (1974). As the United States Supreme Court recently held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), a complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Id. at 570 (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). The court must accept as true all allegations of the complaint and all reasonable factual inferences must be viewed in the light most favorable to plaintiff. Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3rd Cir. 1985). The Court, however, need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3rd Cir. 2004) (citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3rd Cir. 1997)). Nor must the court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to makes a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469 (D. Del. 2008) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 233 (3rd Cir. 2008)). "This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Phillips, 515 F.3d at 234 (quoting Twombly, 550 U.S. at 555 n.3).

## II. BACKGROUND[1]

Defendant Edinboro University is an institution of higher education located in Erie County, Pennsylvania. (Complaint, ¶ 2.2). Defendant PASSHE is an agency of the Commonwealth of Pennsylvania charged with "providing high quality education at the lowest possible cost to the students." 24 P.S. § 20-2003-A(a). Edinboro University is one of fourteen state universities which are constituent members of PASSHE and, as such, is also an agency of the Commonwealth of Pennsylvania. (Complaint, ¶ 2.3). At all times relevant to the allegations of this lawsuit, Defendant Nelson was the Chief of Campus Police at Edinboro University and Defendant Sablo was the University's Dean of Student Affairs. (Complaint, ¶¶ 2.4-2.5).

Plaintiff N. Elizabeth Cook ("Plaintiff), a Caucasian female, graduated from Edinboro University in May, 2007 after pursuing her bachelor's degree "over fifteen years in several colleges and several states." (Complaint, ¶ 3.1). Plaintiff describes herself as a "former high school dropout due to teenage pregnancy, former military wife, mother, grandmother, Licensed Practical Nurse and domestic violence overcomer." (Complaint, ¶ 3.1). In August, 2007, Plaintiff enrolled in a graduate program at Edinboro University with classes beginning on the morning of August 28, 2007. (Complaint, ¶ 3.8). Among Plaintiff's possessions when she arrived on campus was an unregistered .22 caliber revolver. (Complaint, ¶ 3.9). At some point during her first class, Plaintiff sought advice from a fellow graduate student as to where she might safely store the gun, given that she knew she could not keep it in the dorm. (Complaint, ¶ 3.10).

Later that morning, Plaintiff was called out of class by Defendant Nelson and a police officer who informed her that her estranged husband had telephoned an Edinboro

---

[1] Consistent with the above standard, all reasonable inferences from the Plaintiff's Complaint are drawn in her favor.

University professor and accused him of having an affair with Plaintiff during her time as an undergraduate. (Complaint, ¶ 3.11). Plaintiff responded by informing Nelson that her estranged husband had been similarly harassing her via text message and email. (Complaint, ¶¶ 3.13, 3.18). Nelson warned Plaintiff not to have any further contact with the professor in question and to forward him any other harassing messages she received from her estranged husband. (Complaint, ¶¶ 3.12, 3.14).

The following day, August 29, 2007, police officer Robert Burns arrived at Plaintiff's dorm room and indicated that he had been told that Plaintiff needed assistance storing a gun. (Complaint, ¶ 3.19). Plaintiff retrieved the unloaded gun and 17 bullets from her dorm room and accompanied Officer Burns to the Edinboro University police department where the gun was placed in storage. (Complaint, ¶ 3.20). Officer Burns informed Plaintiff that she could retrieve the gun at the end of the school year. (Complaint, ¶ 3.20).

Shortly after leaving the police station, Plaintiff's family members began contacting her to express concern that they had heard rumors that she had been "waving a gun around on campus" and was going to be kicked out of graduate school. (Complaint, ¶ 3.21). Later that evening, Plaintiff was visited by another police officer who asked her to accompany him from her dorm room to the police station. (Complaint, ¶ 3.26). Upon arrival, she was greeted by Defendants Nelson and Sablo who allegedly informed her that she had committed a criminal act by possessing an unregistered handgun on Edinboro University grounds and that she was in "big trouble." (Complaint, ¶¶ 3.27, 3.29a). According to Plaintiff, Nelson and Sablo told her that if she signed an agreement to voluntarily withdraw from Edinboro University, she would not be prosecuted and no disciplinary action would be taken. (Complaint, ¶ 3.29c). Despite Plaintiff's protestations that she had not done anything wrong, she eventually signed a withdrawal form and spent the night at a local hotel. (Complaint, ¶ 3.29g).

As part of her withdrawal, Plaintiff was permanently banned from setting foot on Edinboro University's campus without prior written permission from Nelson or Sablo. (Complaint, ¶ 3.29h).

In her Complaint, Plaintiff contends that she had not committed any crime by having the gun on campus and that she was treated unfairly by Nelson and Sablo. (Complaint, ¶ 3.32). Plaintiff acknowledges that she violated a "campus rule book," but alleges that Nelson and Sablo's response actually stemmed, in part, from a vendetta that she believes they harbored against her because she appealed a parking ticket the prior semester. In addition, she alleges that she had previously "made her opinion very well known on campus that she felt that [Nelson] and the prior President, who was African American, showed racism against underprivileged black youth [sic] when they had criminalized the 18 year old black boy in national media and sent him to jail for sending an email using the "N" word, which is part of the culture that he had grown up in as [sic] African American." (Complaint, ¶¶ 3.29g, 3.29h, 3.33). In early 2008, several months after her withdrawal from Edinboro University, Plaintiff moved out of the Erie area. (Complaint, ¶ 3.45).

On July 10, 2010, Plaintiff filed the instant thirty-two count complaint asserting claims pursuant to, *inter alia*, Title IX, 42 U.S.C. § 1983, various federal and state laws, and the First, Second, Fourth, Fifth, Sixth, Eighth and Ninth Amendments to the United States Constitution.[2] Plaintiff contends that her experience with Edinboro University and Defendants Nelson and Sablo caused her "significant injury, which has manifested itself in a number of ways, including but not limited to . . . homelessness, anxiety,

---

2  Plaintiff's Complaint also contains fifteen counts alleging various violations of Pennsylvania law allegedly committed by two members of the Erie County District Attorney's Office, Jack Daneri and Anthony Bozich. These allegations, set forth in Counts 15 through 32 of her Complaint, have been previously dismissed by this Court and Defendants Daneri and Bozich have been dismissed from this action.

insomnia, hypertension, depression, social withdrawal, anger, fear, alienated relationships with family members and friends, and defamed character." (Complaint, ¶ 3.66). In addition to seeking compensatory and punitive damages, Plaintiff requests that this Court declare her signed withdrawal from Edinboro University "null and void," overturn her prohibition against visiting Edinboro University, award her "SOLE EXCLUSIVE PUBLISHING AND MEDIA RIGHTS to the story," force Edinboro University to apologize to her in writing, and to "[c]ompel [Edinboro University] to conduct a public forum on issues such as racial and gender profiling, racism, zero tolerance policy, and forms of discipline in post-secondary education." (Complaint, p. 26) (emphasis in original).

### III. ANALYSIS

In her Complaint, Plaintiff attempts to state claims pursuant to an extensive list of federal statutes and Constitutional Amendments including the Jeanne Clery Disclosure of Campus Security Policy and Campus Crime Statistics Act ("Clery Act"), 20 U.S.C. § 1092(f) (Count One), the Violence Against Women Act, 42 U.S.C. § 13701 (Count Five), the Crime Victims' Rights Act, 18 U.S.C. § 3771 (Count Five), the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g (Count Six), the Firearm Owners' Protection Act, 18 U.S.C. § 926 (Count Seven), Title IX of the Education Amendments of 1972 ("Title IX") (Counts Two and Three), 42 U.S.C. § 1983 ("Section 1983") (Count Four), and the First, Second, Fourth, Fifth, Sixth, Eighth and Ninth Amendments (Counts 8 through 14). Defendants have moved to dismiss all of these claims on multiple grounds including that many of the statutes cited in the Complaint are not privately enforceable, that other claims are time-barred, and that Eleventh Amendment sovereign immunity bars the majority of the claims against the Commonwealth Defendants.

      A.      The Clery Act

In Count One of her Complaint, Plaintiff contends that Defendants violated the Clery Act, 20 U.S.C. § 1092, by failing to report, arrest and prosecute her for bringing an unregistered handgun onto the Edinboro University campus. (Complaint, ¶¶ 4.1-4.7). The Clery Act mandates that "all colleges and universities that accept federal funding must notify the constituent campus communities – students, faculty, employees, and the like – when certain crimes are brought to their attention." See Havlik v. Johnson & Wales Univ., 509 F.3d 25, 30 (1st Cir. 2007); 20 U.S.C. § 1092(f). In essence, Plaintiff contends that if Defendants believed that she had violated Pennsylvania law[3] with respect to her unregistered handgun, they had an obligation under the Clery Act to "prosecute" and then "properly record and maintain the nature, date, time and general location of [her] crime" rather than "deceive[] her and coerce[] her to spend the night in a hotel and go away quietly the next morning." (Complaint, ¶ 4.3).

The Clery Act specifically disclaims any intention to create a privately enforceable cause of action:

> Nothing in this subsection may be construed to --
>
> (i)     create a cause of action against any institution of higher education or any employee of such an institution for any civil liability; or
>
> (ii)     establish any standard of care.

---

3     Plaintiff's Complaint refers to her possible commission of a "6111" offense, referring to the applicable section of the Pennsylvania Crimes Code - 18 Pa. C.S. § 6111 - that governs the sale or transfer of firearms.

20 U.S.C. § 1092(f)(14)(A)(i); see also Doe v. University of the South, 687 F.Supp.2d 744, 759-60 (E.D. Tenn. 2009). As such, Count One is dismissed.[4]

      B.      Violence Against Women Act and Crime Victims' Rights Act

In Count Five of her Complaint, Plaintiff asserts that she was a "victim of interstate cyberstalking by telecommunications device" within the meaning of the Violence Against Women Act, 42 U.S.C. § 13981, and that, as such, she had a "legal right to be 'reasonably protected' by Nelson and Sablo" pursuant to the Crime Victims Rights Act, 18 U.S.C. § 3771.

The Violence Against Women Act, signed into law in 1994, provides that "[a]ll persons within the United States shall have the right to be free from crimes of violence motivated by gender." 42 U.S.C. § 13981(b). In order to enforce that right, Section 13981(c) originally declared that "[a] person . . . who commits a crime of violence motivated by gender . . . shall be liable to the party injured, in an action for the recovery of compensatory and punitive damages . . .". However, in United States v. Morrison, 529 U.S. 598 (2000), the United States Supreme Court struck down Section 13981 after concluding that Congress lacked the constitutional authority to enact it. Id. at 619, 627 ("[W]e conclude that Congress' power under § 5 does not extend to the enactment of § 13981."). As such, the Violence Against Women Act no longer provides a private right of action. See, e.g., Wolfe v. Beard, 2010 WL 5173199, *12 (E.D. Pa. 2010) ("The defendants argue that 42 U.S.C. § 13981 has been ruled unconstitutional and no longer provides a right of action. The Court agrees.").

---

4    Even if a private cause of action could be asserted under the Clery Act, Plaintiff's contention that she is entitled to civil damages because she was *not* arrested would clearly fail to state a claim.

The Crime Victims' Rights Act was enacted to afford crime victims with numerous rights in federal criminal cases, including the "right to be treated with fairness and respect for the victim's dignity and privacy." 18 U.S.C. § 3771(a)(8). However, the Act expressly states that it shall not "be construed to authorize a cause of action for damages or to create, to enlarge, or to imply any duty or obligation to any victim or other person . . .". 18 U.S.C. § 3771(d)(6). As such, courts have repeatedly held that Section 3771 does not authorize a private cause of action for damages. See, e.g., Hill v. New York Post, 2010 WL 2999795, *3 (S.D.N.Y. 2010) ("The CVRA does not afford a basis for this Court to exercise federal question jurisdiction over Hill's suit."); Searcy v. Paletz, 2007 WL 1875802, *2 (D.S.C. 2007) ("The Crime Victims' Rights Act . . . establishes certain rights of crime victims within the prosecutorial process against a criminal defendant. . . . Plaintiff may not use § 3771 as a mechanism to bring an action against Defendant directly."); In re W.R. Huff Asset Management Co., LLC, 409 F.3d 555, 564 (2nd Cir. 2005) ("[T]he CVRA does not grant victims any rights against individuals who have not been convicted of a crime."). Moreover, Plaintiff does not allege that any federal criminal prosecution ever took place with respect to any of the events described in her Complaint. Consequently, Count Five is dismissed.

C.  Family Educational Rights and Privacy Act

In Count Six of her Complaint, Plaintiff contends that Defendants violated FERPA's confidentiality provisions by discussing her unregistered gun possession with "her daughter, and with college professors, and . . . with her estranged husband who disemminated [sic] false information to numerous parties that Plaintiff had been 'waving a gun around on campus and acting psycho.'" (Complaint, ¶ 4.25). However, courts have repeatedly held that FERPA's confidentiality provisions do not create a private cause of action. See Woodruff v. Hamilton Tp. Public Schools, 305 Fed. Appx. 833,

9

837 (3rd Cir. 2009) (holding that "there is no private cause of action under FERPA's confidentiality provisions . . . and 42 U.S.C. § 1983 is not a vehicle for a FERPA claim.") (citing Gonzaga Univ. v. Doe, 536 U.S. 273, 287-88 (2002)); see also Schaefer v. Las Cruces Public School Dist., 716 F.Supp.2d 1052, 1069-70 (D.N.M. 2010) ("The nondisclosure provisions of FERPA do not create a private right of action, nor do they create a right enforceable under 42 U.S.C. § 1983."). As such, Count Six is dismissed.

      D.     Firearm Owners Protection Act

Count Seven of Plaintiffs' Complaint alleges that "[i]n response to Plaintiff's request for assistance in safely storing a handgun during an interstate move when leaving a financially and mentally abusive relationship, defendants failed to offer assistance, and instead punished and threatened Plaintiff for failure of the gun to be 'registered.'" (Complaint, ¶ 4.30). Plaintiff contends that these actions violated Section 926 of the Firearm Owners Protection Act which provides, in relevant part, that a firearm owner may lawfully "transport a firearm for any lawful purpose from any place where he may lawfully possess and carry such firearm to any other place where he may lawfully possess and carry such firearm if, during such transportation the firearm is unloaded, and neither the firearm nor any ammunition being transported is readily accessible or is directly accessible from the passenger compartment of such transporting vehicle . . .". 18 U.S.C. § 926A. Here, the Complaint specifically indicates that Plaintiff's firearm was no longer in transit, but rather, was stored in a dormitory room at Plaintiff's destination.[5] As such, Section 926A is clearly inapplicable and Count Seven is dismissed.

---

5    Although I need not decide the issue, I note the existence of authority suggesting that no private right of action exists in this section. In Torraco v. Port Authority of New York and New Jersey, for example, the Second Circuit extensively analyzed Section 926 and determined that it was so " 'vague and amorphous' that its enforcement would

E.  42 U.S.C. § 1983 Claims

In Count Four of her Complaint, Plaintiff attempts to assert liability against all Defendants pursuant to Section 1983 based upon their alleged "callous indifference" to her "right to personal safety and to be free from harm." (Complaint, ¶ 4.18). In order to recover pursuant to Section 1983, "a plaintiff must establish that (1) the conduct complained of was committed by a person acting under color of state law, and (2) that such conduct deprived a person of rights, privileges and immunities secured by the Constitution." Bougher v. University of Pittsburgh, 882 F.2d 74, 78 (3rd Cir. 1989) (citing Daniels v. Williams, 474 U.S. 327, 331 (1986)).

Specifically, Plaintiff alleges that between August 27 and August 29, 2007, Defendants Nelson and Sablo forced Plaintiff to voluntarily withdraw by threatening her with arrest for her possession of an unregistered handgun on campus. Plaintiff also alleges more generally that Nelson and Sablo failed to respond appropriately to the emails and texts that Plaintiff received from her estranged husband and that Defendants' threatening behavior may have been a response to her "well known" disagreements with Edinboro University concerning various university policies. Finally, Plaintiff alleges that the state entities, Edinboro University and the PASSHE, defended and failed to remedy Nelson and Sablo's "evil" behavior. (Complaint, ¶¶ 4.17, 4.18).

Significantly, each of the allegations contained in Plaintiff's Complaint with respect to the moving Defendants took place on or before August 31, 2007.[6] It is

---

strain judicial competence" within the context of a private enforcement action pursuant to 42 U.S.C. § 1983. Torraco, 615 F.3d 129, 138 (2nd Cir. 2010).

6  All of the factual allegations described in Plaintiff's Complaint that occurred after August 31, 2007 are attributed to the two previously dismissed Defendants, Daneri and Bozich, or concern injuries suffered by third parties who are not involved in this lawsuit or events which have no legal significance.

well-settled that the appropriate statute of limitations for a Section 1983 action brought in Pennsylvania is the two-year statute of limitations contained in 42 Pa.C.S.A. § 5524. See, e.g., Bougher, 882 F.2d at 78-79 ("[A]ll section 1983 claims are subject to the state statute of limitations for personal injury actions.  Here, the appropriate limitations period for section 1983 claim[s] is Pennsylvania's two-ear statute of limitations applicable to personal injury actions.") (internal citations omitted) (citing, e.g., Fitzgerald v. Larson, 769 F.2d 160, 162 (3rd Cir. 1985)).  Consequently, all of Plaintiff's Section 1983 claims against the Defendants are time-barred and are properly dismissed on this basis.

In addition, Plaintiff's Section 1983 claims with respect to Edinboro University and the PASSHE are independently barred by the Eleventh Amendment to the United States Constitution which provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. Amend. XI.  Notwithstanding the specific text of the Eleventh Amendment, the United States Supreme Court has also held that a federal court cannot "entertain a suit brought by a citizen against his own State."  Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98 (1984).  Moreover, the immunity provided by the Eleventh Amendment extends to "suits against departments or agencies of the state having no existence apart from the state."  Laskaris v. Thornburgh, 661 F.2d 23, 25 (3rd Cir. 2005) (citing Mt. Healthy City Board of Education v. Doyle, 429 U.S. 274, 280 (1977)).  With respect to the PASSHE and the fourteen universities which comprise its membership, including Edinboro University, courts have repeatedly and consistently held that each constitutes "an arm of the State in the context of a suit brought under § 1983" and, as such, enjoy the immunity afforded by the Eleventh Amendment.  O'hara v. Indiana University of Pennsylvania, 171 F.Supp.2d

490, 497 (W.D. Pa. 2001); Skehan v. State System of Higher Educ., 815 F.2d 244, 248-49 (3rd Cir. 1987) (concluding that "the State System is, effectively, a state agency and therefore entitled to the protection of the eleventh amendment in the federal courts."); Lach v. Robb, 679 F.Supp. 508, 513 (W.D. Pa.), aff'd, 857 F.2d 1464 (3rd Cir. 1988) (holding that, because the PASSHE is a state agency immune from suit in federal court under the Eleventh Amendment, "it follows that the constituent parts of the State System, the state universities . . . also share Eleventh Amendment immunity."); Layser v. Morrison, 935 F.Supp. 562, 566 (E.D. Pa. 1995) (holding that a university's status as a member in the PASSHE entitles it to the protections of the Eleventh Amendment, barring a plaintiff from asserting a § 1983 action against it).

Given the protections afforded by the Eleventh Amendment, a state (or state agency) can only be sued by an individual in federal court if the state explicitly waives its sovereign immunity or if Congress has clearly abrogated that immunity by providing "an unequivocal expression of congressional intent to 'overturn the constitutionally guaranteed immunity of the several States'" with respect to a particular legislative enactment. Pennhurst, 465 U.S. at 99 (quoting Quern v. Jordan, 440 U.S. 332, 345 (1979)). Pursuant to statute, Pennsylvania has not consented to suit in federal court. See 42 Pa. C.S.A. § 8521(b) ("Nothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States."). Moreover, it is well-settled that Congress did not intend to abrogate Eleventh Amendment immunity through the enactment of Section 1983. See Quern, 440 U.S. at 340-46 (holding that Congress did not intend "by the general language of § 1983 to override the traditional sovereign immunity of the States."); Hurst v. City of Rehoboth Beach, 288 Fed. Appx. 20, 25 (3rd Cir. 2008) ("Although Congress can abrogate a state's sovereign immunity, it did not do so through the enactment of 42 U.S.C. § 1983."); Vaders v. Dep't. of

13

Agriculture, 2010 WL 1053301, *2-3 (E.D. Pa. 2010) (dismissing plaintiff's Section 1983 claims against a state agency on the basis of Eleventh Amendment immunity). As such, Plaintiff's Section 1983 claims against the Commonwealth Defendants are barred by the Eleventh Amendment.

For the foregoing reasons, Count Four is dismissed.

F.  Title IX Claims

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). In Count Two of her Complaint, Plaintiff alleges that Defendants discriminated against her on the basis of her "race, gender, socioeconomic status and marital status as a woman leaving a man with intention of filing for divorce" in violation of Title IX. (Complaint, ¶ 4.9). In Count Three, Plaintiff states that Defendants retaliated against her "because of her prior appeal of a parking ticket and her publicly voiced disproval of racism" in violation of Title IX. (Complaint, ¶ 4.13).

In Bougher, the Third Circuit held that the appropriate statute of limitations in a Title IX action, as an in action pursuant to 42 U.S.C. § 1983, "is Pennsylvania's two year statute of limitations period applicable to personal injury actions . . .". Bougher, 882 F.2d at 78; see also Lillard v. Shelby County Bd. of Educ., 76 F.3d 716, 729 (6th Cir. 1996) (following Bougher). As previously established, the injuries that Plaintiff complains of – primarily, her forced withdrawal from Edinboro University – occurred

between August 27 and August 29, 2007. Consequently, Plaintiff's Title IX claims are untimely and are dismissed.[7]

### G. Other Constitutional Claims

In Counts Eight through Fourteen of her Complaint, Plaintiff attempts to invoke the First, Second, Fourth, Fifth, Sixth, Eighth and Ninth Amendments in the following conclusory manner:

> Count Eight
> 5.4 Numerous violations of First Amendment freedom of speech, and right to petition.
>
> Count Nine
> 5.5 Violation of the Second Amendment right to keep and bear arms.
>
> Count Ten
> 5.6 Violation of the Fourth Amendment right against unreasonable search and seizure.
>
> Count Eleven
> 5.7 Violation of the Fifth Amendment and Fourteenth Amendment regarding Due Process.
>
> Count Twelve
> 5.8 Violation of the Sixth Amendment right to fair and speedy trial, notice of accusation, right to counsel.
>
> Count Thirteen

---

[7] Count Three also fails to state a claim because it does not allege any gender-based discrimination. Rather, Plaintiff specifically asserts that Defendants' allegedly retaliatory conduct was the result of her prior appeal of a parking ticket and her criticism of perceived racism. Title IX is only implicated by discrimination "on the basis of . . . gender." Tafuto v. New Jersey Inst. of Tech., 2011 WL 3163240, *2 (D. N.J. 2011) (citing Tingley-Kelley v. Trs. of Univ. of Pa., 677 F.Supp.2d 764, 775 (E.D. Pa. 2010)). Similarly, Plaintiff's reference to her race, socioeconomic status and marital status in Count Two of her Complaint are not relevant to a Title IX claim.

> 5.9 Violation of the Eighth Amendment right against cruel and unusual punishment.
>
> Count Fourteen
> 5.10 Violation of Ninth Amendment unenumerated rights.

(Complaint, ¶¶ 5.4-5.10). As an initial matter, we note that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937, 1949-50 (2009). Here, Plaintiff's mere recital of various amendments in the absence of any supporting factual averments is patently inadequate and does not state a claim. Moreover, some of the proposed claims are clearly inapplicable. For instance, Plaintiff was never arrested or charged with any crime in conjunction with any of the events alleged in her Complaint. Consequently, her invocation of the Eighth Amendment's prohibition against cruel and unusual punishment and her Sixth Amendment right to a fair and speedy trial and to counsel have no application. In addition, to the extent that Plaintiff seeks to vindicate these rights through 42 U.S.C. § 1983, they would be untimely for the reasons previously discussed.

### H. State Law Claims

Finally, Plaintiff asserts various state law claims including "gross negligence" on the part of Edinboro University and the PASSHE (Count 17) and defamation against all Defendants (Count 16).[8] She also accuses Nelson and Sablo of "attempt[ing] to establish a gun registry where none existed" in violation of the Pennsylvania Uniform Firearms Act, 18 Pa.C.S.A. § 6106 (Count 15). Plaintiff's state law claims are subject

---

[8] Although Count 16 of the Complaint specifically alleges a violation of Section 8344 of the Pennsylvania Uniform Single Publication Act, 42 Pa.C.S.A. § 8341, that provision, which states that a plaintiff must establish malice or negligence in order to recover damages in a civil action for libel, is clearly inapplicable. Count 16 is more accurately construed as an attempt to state a claim for common law defamation.

to dismissal based upon both the statute of limitations and the doctrine of sovereign immunity.

As set forth above, the Pennsylvania General Assembly has, by statute, expressly declined to waive its Eleventh Amendment immunity. 42 Pa.C.S.A. § 8521(b) ("Nothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment ..."). As such, Edinboro University and the PASSHE are immune from suit in federal court for any of the state law claims asserted by Plaintiff.

With respect to Plaintiff's defamation claim against Nelson and Sablo, the Complaint states that each of the allegedly defamatory acts took place between August 27 and August 29, 2007. In Pennsylvania, the statute of limitations for defamation claims is one year. 42 Pa.C.S.A. § 5523(1). Consequently, Plaintiff's defamation claim is time-barred.

I. Futility of Amendment

"[The Third Circuit has] held that even when a plaintiff does not seek leave to amend, if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile." Alston v. Parker, 363 F.3d 229, 236 (3rd Cir. 2004) (citing Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir.2002); Shane v. Fauver, 213 F.3d 113, 116 (3rd Cir. 2000)). An amendment is futile if the amended complaint cannot withstand a renewed motion to dismiss. See Shane, 213 F.3d at 115. "[T]hese principles apply equally to *pro se* plaintiffs and those represented by experienced counsel." Alston, 363 F.3d at 236.

The instant action is dismissed with prejudice and without leave to amend because any such amendment would be futile. See, e.g., Foman v. Davis, 371 U.S. 178, 182 (1962); Fletcher–Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d

17

247, 251 (3rd Cir. 2007); Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3rd Cir. 2002). It is evident from the Complaint that the injuries alleged by Plaintiff took place between August 27 and August 29, 2007. Consequently, all claims brought pursuant to Section 1983 are time-barred. In addition, several other claims attempt to invoke federal statutes that contain no provision for a private cause of action under any set of facts, and the majority of claims against the Commonwealth Defendants are independently barred by the doctrine of sovereign immunity.[9]

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is granted and this action is dismissed with prejudice.

---

[9] I also note that Plaintiff, in her brief in response, explicitly disclaims any intention to seek leave to amend:

> To motion the Court for leave to submit an amended complaint to eliminate these technical deficiencies would be redundant. The pro se Plaintiff desires to advance her claims rather than amend her Complaint to be more conclusive or to engage in a duel to interpret precedent setting cases such as Twombly and Iqbal. The factual allegations in the Complaint are conclusive enough to be plausible and support the claims.

(Brief in Opposition to Motion to Dismiss, pp. 6-7).

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| NANCY E. LEWEN, a/k/a N. ELIZABETH COOK, <br><br>           Plaintiff, <br><br>   v. <br><br>EDINBORO UNIVERSITY OF PENNSYLVANIA, *et al.*, <br><br>           Defendants. | C.A. No. 10-164 Erie <br> District Judge McLaughlin |

## **ORDER**

AND NOW, this 28th day of September, 2011, and for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that Defendants' Motion to Dismiss is GRANTED. Judgment is entered in favor of Defendants.   This matter is closed.

                                                                 /s/ Sean J. McLaughlin
                                                                 United States District Judge

cm: All parties of record. ___